IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

TAWANDA TOLBERT,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        CASE NO. 3:21-CV-33-KFP
                                    )
KILOLO KIJAKAZI,                    )
Acting Commissioner of Social Security,  )
                                    )
        Defendant.                  )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Tawanda Tolbert seeks review of the Social Security Administration's decision denying her application for disability insurance benefits. The undersigned, having considered the record, briefs, applicable regulations, and caselaw, AFFIRMS the decision of the Commissioner of Social Security.

## I.    STANDARD OF REVIEW

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the

decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II.   PROCEDURAL BACKGROUND

Tolbert filed applications for a period of disability and disability insurance benefits and supplemental security income in August 2019 alleging a disability onset date of August 23, 2013. R. 29. After her application was denied on initial review, she had a hearing before an ALJ on October 7, 2020. R. 29. At the hearing, she amended her onset date to August 1, 2019. R. 29. Because Tolbert's date last insured predates the amended onset date, Plaintiff withdrew her request for a hearing on her application for a period of disability and disability insurance benefits, and this case is proceeding only on her claim for supplemental security income. R. 29. The ALJ issued an unfavorable decision on this claim on November 4, 2020, and Tolbert requested administrative review of that decision. R. 29–40, 278. The Appeals Council denied her request, and Plaintiff filed this appeal. R. 1–4; Doc. 1.

## III.   FACTUAL BACKGROUND

Tolbert's date of birth is April 3, 1970, making her fifty years old on the date of the ALJ's decision. R. 14, 39. She completed high school, has an associate degree, and has past work experience as an inspector, substitute teacher, parts manager, cashier II, and a composite job consisting of braiser and machine operator. R. 58–61, 69–72, 309–24.

The ALJ found that Tolbert has the severe impairments of hypertension, diabetes mellitus, obesity, osteoporosis, major depressive disorder with acute anxious distress, bipolar disorder, and unspecified personality disorder, and she found that Tolbert has the non-severe impairments of lumbar strain, left hip strain, post traumatic headache, status

post pelvic adhesion lysis with bladder neck laceration, and fibromyalgia. R. 31–32. The ALJ determined that Tolbert does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2020). R. 32–34.

Next, she assessed Tolbert's residual functional capacity and, in doing so, found that Tolbert could perform medium work with the following limitations: occasional climbing of ramps and stairs; never climbing ladders and scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; no exposure to unprotected heights or hazardous moving mechanical parts; no commercial driving; and occasional exposure to humidity and wetness, extreme cold, extreme heat, and vibrations. R. 34. She further limited Tolbert to simple tasks, occasional interaction with supervisors and coworkers, no public interaction, and occasional changes in a routine work setting. R. 34.

Next, the ALJ found that Tolbert could not perform her past relevant work. R. 39. With the benefit of vocational expert (VE) testimony, the ALJ then found, based on Tolbert's RFC, age, education, and work experience, that there are jobs existing in significant numbers in the national economy that she can perform, such as packing floor worker, hand packer, and general helper. R. 39–40.

## IV.   DISCUSSION

On appeal, Plaintiff asserts the following issues: (1) whether the ALJ's findings with respect to the prior administrative medical findings of Drs. Dennis, Whitney, and Hogan are inconsistent with the RFC; (2) whether the ALJ erred in evaluating Tolbert's bipolar disorder, resulting in an RFC that is unsupported by substantial evidence and an incomplete

hypothetical to the VE; and (3) whether substantial evidence supports the ALJ's finding

that Tolbert can perform the jobs of packing floor worker, hand worker, and general helper.

Doc. 14 at 1, 6–16.

### A.   The RFC is not inconsistent with the ALJ's assessment of the prior administrative findings of Drs. Dennis, Whitney, and Hogan.

#### (1)   Dr. Larry Dennis, Ph.D.

Dr. Dennis, a state agency psychiatric advisor, reviewed Tolbert's medical records

and found, among other things, that she can understand, remember, and carry out short and

simple instructions and tasks but that she cannot complete detailed tasks and instructions.

R. 128. The ALJ found Dr. Dennis's opinion persuasive because it was "more in line with

the evidence . . . showing that the claimant's mental impairments cause no more than

moderate limitations," noting that the medical evidence overall shows "intermittent mood

and cognitive abnormalities, which are well treated and controlled with prescription

medications." R. 37. In the RFC, the ALJ limited Tolbert to simple tasks but did not include

a limitation on instructions. Plaintiff argues that simple tasks may need detailed or lengthy

instructions, creating a conflict between the RFC's limitation to simple tasks and Dr.

Dennis's limitation to "short" and "simple" instructions.[1] Doc. 14 at 8.

First, determining a claimant's RFC and ability to work is within the province of the

ALJ, not doctors. *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir.

2021) (stating RFC is matter reserved for ALJ and, while a medical opinion is considered,

---

[1] Dr. Dennis did not state that Plaintiff was unable to carry out lengthy instructions. Additionally, although one part of his opinion states that Tolbert cannot complete detailed tasks and instructions, it also states that she was only "moderately limited" in the ability to carry out detailed instructions. R. 128.

it is not dispositive). An ALJ may "distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation." *Johnson v. Saul*, No. CV418-115, 2020 WL 858891, at *2 (S.D. Ga. Jan. 31, 2020), *report and recommendation adopted,* No. CV418-115, 2020 WL 865407 (S.D. Ga. Feb. 19, 2020). There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination or specifically address every aspect of an opinion or every piece of evidence in the record. *Williamson v. Kijakazi*, No. 2:20-CV-772-SMD, 2022 WL 2257050, at *3 (M.D. Ala. June 23, 2022) (citations omitted). Here, the ALJ was within her province to distill Tolbert's RFC from Dr. Dennis's opinion and the evidence as a whole, and she was not bound to adopt every restriction in Dr. Dennis's opinion simply because she found the opinion persuasive. *See Shipes v. Kijakazi*, No. 1:21-CV-80-SMD, 2022 WL 4116984, at *4 (M.D. Ala. Sept. 9, 2022).

Moreover, as long as the ALJ "has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached[,]'" the RFC is supported by substantial evidence. *Nichols v. Kijakazi*, No. 3:20-CV-00224-SRW, 2021 WL 4476658, at *7 (M.D. Ala. Sept. 29, 2021) (citing *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016)). The Court's role is to determine whether substantial evidence supports the Commissioner's decision, so a claimant cannot simply identify evidence that supports her position; she must show the absence of substantial evidence supporting the ALJ's decision. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). Tolbert does not argue the absence of substantial evidence as a whole, and she provides no authority for her argument that a restriction to "simple tasks" equates to a requirement of performing tasks

with lengthy instructions. She cites *Johnson v. Comm'r of Soc. Sec.*, 782 F. App'x 875, 878 (11th Cir. 2019)) for the proposition that there is "'apparently' a conflict between an employee limited to 'simple, routine tasks' and one able to deal with problems involving several concrete variables," which is required for reasoning level three jobs, but she points to no part of the ALJ's opinion that requires her to "deal with problems involving several concrete variables."[2] Accordingly, the Court finds no reversible error by the ALJ on this issue.

### (2)    Dr. Richard Whitney

Dr. Richard Whitney, also a state agency consultant, completed a disability determination for Tolbert's claim. As part of his assessment, Dr. Whitney limited Tolbert to *occasional* balancing, stooping, kneeling, crouching, and crawling. R. 126. Plaintiff argues the ALJ erred by finding Dr. Whitney's opinion persuasive, finding Tolbert "slightly more limited" than Dr. Whitney, and then limiting Tolbert to *frequent* balancing, stopping, kneeling, crouching, and crawling.

As the Commissioner notes, the ALJ actually found Dr. Whitney's opinion to be "generally, though not entirely, persuasive," (R. 37) and, as explained above, determining a claimant's RFC and ability to work is for the ALJ, who is not required to adopt every

---

[2] At the end of this argument concerning the RFC, Tolbert makes a cursory argument that the ALJ erred by not including Dr. Dennis's limitations in the hypothetical posed to the VE. Doc. 14 at 8–9. She simply states that the limitations were not included, an ALJ must provide the VE with the claimant's impairments or implicitly account for them in order for the VE testimony to constitute substantial evidence, and a failure to include the restrictions means the ALJ did not provide a complete picture of Tolbert's RFC. However, for the same reasons that the Court finds no error or conflict in the RFC with respect to Dr. Dennis's restriction, it finds no error or conflict in the hypothetical posed to the VE, which included the RFC's limitation to simple tasks.

restriction in a doctor's opinion. Further, the Court sees no inconsistency in finding Tolbert "slightly more limited" than Dr. Whitney but assigning a less restrictive limitation on balancing, stooping, kneeling, crouching and crawling. Dr. Whitney placed no restrictions on Tolbert's exposure to extreme cold, extreme heat, or humidity, but the ALJ limited Tolbert to occasional exposure to these environmental conditions. Because this greater restriction comports with the ALJ's statement that she found Tolbert slightly more limited than Dr. Whitney, there is no inconsistency between Tolbert's RFC and the ALJ's assessment of Dr. Whitney's opinion.

**(3)    Dr. Victoria Hogan, M.D.**

Plaintiff makes the same argument with respect to Dr. Hogan's opinion. Dr. Hogan, a state agency consultant, limited Tolbert to *no* exposure to extreme cold, extreme heat, or humidity. Plaintiff contends it was inconsistent for the ALJ to find Dr. Hogan's opinion generally but not entirely persuasive, find Tolbert "slightly more limited" than Dr. Hogan, and then limit Tolbert to *occasional* exposure to extreme cold, extreme heat, humidity, wetness, and vibrations. However, Dr. Hogan placed no limitations on Tolbert's ability to balance, stoop, kneel, crouch, or crawl, while the ALJ restricted Tolbert to frequent performance of these activities. Because this greater restriction comports with the ALJ's statement that she found Tolbert slightly more limited than Dr. Hogan, as with Dr. Whitney, there is no inconsistency between Tolbert's RFC and the ALJ's assessment of Dr. Hogan's opinion.

The flaw in Tolbert's argument on this point can be seen by comparing the opinions of Dr. Whitney and Dr. Hogan. Tolbert argues the ALJ erred by finding the opinions

persuasive, finding Tolbert slightly more limited than each doctor, and then crafting an RFC with a limitation that was more restrictive than the doctor. This argument overlooks the fact that the opinions of Dr. Whitney and Dr. Hogan conflict with each other, making it impossible for an ALJ to craft an RFC that mirrors both opinions. For example:

- Dr. Whitney imposed no restrictions on exposure to extreme cold, extreme heat, or humidity. R. 126–127. Dr. Hogan restricted Tolbert from all exposure to extreme cold, extreme heat, or humidity. R. 100. The ALJ restricted Tolbert to occasional exposure to humidity, wetness, extreme cold, extreme heat, and vibrations.

- Dr. Whitney found Tolbert could occasionally climb ramps and stairs. R. 126. Dr. Hogan found she could frequently climb ramps and stairs. R. 100. The ALJ found she could occasionally climb ramps and stairs.

- Dr. Whitney found Tolbert could never climb ladders, ropes and scaffolds. R. 126. Dr. Hogan found she could occasionally climb ladders, ropes, and scaffolds. R. 100. The ALJ found she could never climb ladders and scaffolds.

- Dr. Whitney limited Tolbert to occasional balancing, stooping, kneeling, crouching, and crawling. R. 126. Dr. Hogan placed no restrictions on these activities. R. 100–01. The ALJ limited Tolbert to frequent balancing, stopping, kneeling, crouching, and crawling.

Thus, despite finding both opinions generally persuasive, the ALJ could not have crafted an RFC entirely consistent with both opinions. An ALJ may craft an RFC from the

record as a whole, and there is no requirement that the RFC directly correspond with a physician's opinion. *See Johnson,* 2020 WL 858891, at *2. As long as the ALJ provides a sufficient rationale to link substantial record evidence to her legal conclusions, the RFC is supported by substantial evidence. *Nichols*, 2021 WL 4476658, at *7. Here, as set out above, the opinions of Drs. Hogan and Whitney constitute substantial evidence supporting each of the ALJ's restrictions, and the Court finds no conflicts with Tolbert's RFC and the ALJ's assessments of these opinions.

**B.      Substantial evidence supports the ALJ's evaluation of Tolbert's bipolar disorder.**

**(1)      Dr. Culver's Opinion**

Tolbert next argues that the ALJ failed to account for absenteeism from her bipolar disorder in the RFC or the hypothetical posed to the VE. This argument hinges on the opinion of Dr. Culver, who opined that Tolbert would miss more than four days of work per month. However, as discussed below, the ALJ found Dr. Culver's opinion to be unpersuasive, and the Court finds that substantial evidence supports this determination.

Tolbert cites *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1106 (11th Cir. 2021) for the proposition that it is error for an ALJ to dismiss a psychiatrist's treatment notes as indicating only mild limitations simply because some of the claimant's examinations were better than others (Doc. 14 at 12), but *Simon* is distinguishable. First, Simon filed his claim before March 27, 2017, when the regulations required an ALJ to give substantial or considerable weight to a treating physician's opinion absent good cause to

do otherwise.[3] More important, however, are the differences in the extent of treatment provided by Dr. Culver to Tolbert and the degree to which Dr. Culver's treatment records and the record evidence support his opinion.

For example, in *Simon* Dr. Turner saw the claimant 32 times from 2013 through 2017. 7 F.4th at 1097. At the initial consultation in May 2013, she documented Simon's symptoms, including severe mood swings and instances of obsessive-compulsive behavior. *Id*. at 1097–98. She also documented that Simon had been experiencing these symptoms for years and had been taking mental-health medication for twenty-two years. *Id*. Dr. Turner diagnosed Simon with bipolar disorder, described him as having severe psychosocial or environmental problems, and started him on a course of psychiatric treatment with medication. *Id*. Her records went on to document periods of stability on medication, but she continued to note that Simon suffered significant symptoms of mental illness, including panic attacks, racing thoughts, episodes of anger, and difficulty coping. *Id*. On many other occasions, Dr. Turner indicated that Simon's condition was quite serious and worsening rather than improving, and she continued to describe ongoing symptoms of bipolar disorder throughout of her four years of treating Simon. *Id*.

Here, Tolbert visited the Dr. Culver in December 2018 to establish care and to get treatment for musculoskeletal pain, osteoporosis, and diabetes. R. 964. Tolbert reported little interest and pleasure and feeling down, depressed, and hopeless (R. 965), but the

---

[3] The treating physician in *Simon* was also a specialist, and both the previous and current regulations allow an ALJ to consider a medical source's specialty when evaluating his opinion. *See* 20 C.F.R. § 416.927(d)(5) and 20 C.F.R. § 416.920c(c)(4). Dr. Culver is not a specialist in the treatment of mental health conditions; he treated Tolbert for a range of conditions, such as general pain, hypertension, diabetes, osteoporosis, coughing, and depression.

records also show she was not taking Latuda, the medication prescribed for her depression (R. 971). In the assessment/plan section of the records for this visit, Dr. Culver made no mention of mental health issues. R. 973–74.

Tolbert saw Dr. Culver again in January 2019 for hypertension and a urine culture follow-up. R. 977. She was not taking her medication but was negative for anxiety, depression, and insomnia. R. 982. She reported no mental health problems, and Dr. Culver made no mention of mental health issues in the assessment/plan section for this visit. R. 984.

In March 2019, Tolbert presented for hypertension, osteoarthritis, and depression, and Dr. Culver noted that her "first episode occurred in 2012." R. 987. The records indicate that she had a depressed mood and fatigue. R 987. She reported feeling down, depressed, and hopeless, but her other psychological assessments were normal. R. 993, 994. Her depression was noted as "poorly controlled," but she was not taking her prescribed medication. R. 992–95. She was given new prescriptions for alprazolam and sertraline. R. 996.

In May 2019, Tolbert saw Dr. Culver for a PAP and mammogram routine screening. R. 998. She was negative for anxiety, depression, and insomnia (R. 1003), and there is no mention of mental health issues. Tolbert saw Dr. Culver again at the end of May for a follow-up from her PAP, but there is nothing remarkable in these records. R. 1007–15.

On August 9, 2019, Tolbert saw Dr. Culver for a pelvic mass, hypertension, and vaginitis. R. 1017. She was negative for anxiety, depression, insomnia, and her

psychological assessment was normal. R. 1023, 1025. There is no mention of bipolar disorder, and the patient plan for her depression was to "take meds as prescribed." R. 1026.

Two weeks later and three weeks after she applied for social security benefits, Tolbert saw Dr. Culver for hypertension and a disability evaluation. R. 1028–38. On this visit, Dr. Culver noted that Tolbert's mental health symptoms began six years ago, they were reportedly severe, they are constant and chronic, she was diagnosed with bipolar and depression in 2013, and she has "many other disabling issues including childhood sex abuse, personality disorder and the like." R. 1028. According to the records, Tolbert was positive for anxiety, depression, insomnia, bipolar, and personality disorder. R. 1034. Dr. Culver's patient plan, for the first time, included treatment for bipolar disorder and stated that Tolbert should "continue meds if any" and "monitor behavior for 'disruptness.'" The patient plan for depression was to "take meds as described." R. 1036. Tolbert was given bipolar care instructions on this visit. R. 1037.

The next day, based on the above treatment history, Dr. Culver completed a questionnaire that included the following, among other severe restrictions:

- She would be absent from work more than 4 days per month;

- She can sit and stand an hour and thirty minutes at a time;

- She can sit, stand, and walk less than two hours total in an hour eight day (with normal breaks);

- She can rarely look down or hold or head in a static position;

- She can rarely lift less than ten pounds and never lift ten or more;

- She has significant limitations in doing repetitive reaching, handling, or fingering.

R. 1409–12.

The ALJ found Dr. Culver's opinion unpersuasive because it was internally inconsistent and unsupported by the medical evidence of record. After an independent review of the record, the Court agrees. The record contains no evidence supporting Dr. Culver's extreme limitations on lifting, sitting, standing, walking, looking down, holding her head in static position, reaching, handling, or fingering. By way of comparison, Drs. Whitney and Hogan, whose opinions are discussed above, found that Tolbert could occasionally lift and carry up to 50 pounds, frequently lift and carry up to 25 pounds, sit and stand and walk for six hours a day, with unlimited pushing and pulling and no manipulative limitations. R. 100–101, 125–26. Tolbert has not challenged the significantly less restrictive opinions of Dr. Whitney and Hogan, and she does not challenge the ALJ's complete disregard of Dr. Culver's limitations in these areas.

Tolbert focuses instead on Dr. Culver's opinion that she would miss more than four days of work per month, arguing that the ALJ failed to account for the absenteeism caused by bipolar disorder when she rejected this opinion. Just as with the above restrictions, Dr. Culver's treatment records do not support this restriction. Before completing the disability evaluation, Dr. Culver saw Tolbert in December 2018 when she reported feeling depressed, but there is no mention of any mental condition in Dr. Culver's assessment or patient plan. Dr. Culver saw Tolbert in January 2019 for hypertension and a urine culture follow-up, but again there is no mention of a mental health problem. Dr. Culver then saw Tolbert in March

13

for hypertension, osteoarthritis, and depression, when she was prescribed alprazolam and sertraline; in May for a PAP and mammogram, with no mention of mental health issues; and in August for a pelvic mass, hypertension, and vaginitis, when the patient plan for depression was to take medication as prescribed. These records do not reflect long-term treatment—or any treatment—for bipolar symptoms such as mania, panic attacks, racing thoughts, episodes of anger, visual or auditory hallucinations, suicidal ideations, paranoia, or psychotic episodes that would cause her to miss more than four days of work per month. Indeed, until Tolbert presented for a disability evaluation eight months after establishing patient care, there is no mention of bipolar disorder in Dr. Culver's records.

In the months following Dr. Culver's disability evaluation, Tolbert reported worsening symptoms. In September 2019, she claimed that functioning was difficult and that she had anxious and fearful thoughts, difficulty falling asleep, difficulty staying awake, feelings of invulnerability, racing thoughts, and depression associated with chronic pain. R. 1039. She said she felt little interest or pleasure; felt depressed, hopeless, tired, and sad; had no energy; experienced a poor appetite or overeating; felt bad about herself; and had trouble concentrating. R. 1040. In December 2019 her bipolar disorder was listed as stable (R. 1326), but in January 2020 she reported that her depression was worsening, functioning was extremely difficult, and she was "back hearing voices" (R. 1338). Dr. Culver's assessment/plan was to refer her to a mental health counselor and for her to go to the emergency room if symptoms worsened. R. 1347. In February, she reported difficulty concentrating, functioning, falling asleep, and staying asleep, and she stated she was

restless but denied fatigue. R. 1350. Throughout this time, her conservative treatment of alprazolam and sertraline continued. R. 1359–60.

Tolbert then saw Dr. Culver in March 2020 for hypertension, pain, vaginal issues, and diabetes. R. 1382. There is no mention of mental health issues except under the assessment for major depressive disorder, which indicates the condition was in "fair control" and that Tolbert should "take meds as prescribed." R. 1391. In June, Tolbert reported extreme difficulty functioning, difficulty concentrating, and difficulty falling asleep and staying asleep; the patient plan was still to "take meds as prescribed." R. 1494. Tolbert saw Dr. Culver again in June and July for an automobile accident and vaginal issues, but there is no report of mental health problems and no indication that she was experiencing any symptoms that necessitated a change in her treatment plan. R. 1497–1503. For these reasons, the Court agrees with the ALJ's finding that Dr. Culver's opinion was inconsistent with his own medical records.

### (2)   Mental Evaluations of Dr. Stutts and Dr. Dennis

Dr. Culver's opinion is also inconsistent with the record as a whole, including the mental health evaluations of Drs. Stutts and Dennis. On February 28, 2020, Dr. Stutts, a state agency psychologist, evaluated Tolbert at the request of the social security administration. R. 1405. Tolbert reported that she has some difficulty talking with others and some difficulty maintaining social and family relationships. R. 1406. Dr. Stutts noted that she follows rules and instructions, makes purchases, handles money, and attends to televisions shows and events without issues. When asked about daily activities, she stated that she "[tries] not to hurt nobody." R. 1406. She isolates at home and complained that

people bother her and misunderstand her. She stated that she is "too blunt." She does her own chores and errands, drives, and take care of her activities of daily living. She reported a fair appetite and poor sleep. R. 1406.

With Dr. Stutts, Tolbert denied suicidal and homicidal ideations, hallucinations, and paranoia. She reported that she hears her deceased mother. R. 1406. Dr. Stutts noted that her paranoia is not overt but that she has a paranoid personality style. R. 1406. She complained of sadness, anxiety, and worry. R. 1406. Dr. Stutts noted that she was lethargic, has anhedonia, has poor sleep, is quick to anger, and is irritable, but her memory, judgment, and insight were intact. R. 1406. Dr. Stutts noted that Tolbert gave a poor effort at the interview, but he opined that she was capable of working in an environment with minimal interaction with others. R. 1407. Tolbert appeared mildly impaired for sustaining on simple instructions and mildly to moderately impaired for sustaining concentration, attention, pace, and persistence for two hours. R. 1407. She appeared mildly to moderately impaired for sustaining social interactions and moderately impaired for coping with typical workplace stress. R. 1407. The ALJ found Dr. Stutts's opinion persuasive because he is a specialist, the opinion was consistent with his examination, and it was consistent with the medical record as a whole, which shows that Tolbert's impairments cause no more than moderate limitations and are controlled with conservative treatment. R. 38.

Additionally, Dr. Dennis's opinion, discussed above, states that Tolbert is "not significantly limited" in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. R. 128. Dr. Dennis noted that she would need casual supervision and that she would work best with a well-spaced work-

station, and there is no suggestion in his opinion that Tolbert's bipolar disorder will cause cyclical absenteeism. R. 128.

The Court finds that the opinions of Dr. Stutts and Dr. Dennis constitute substantial evidence supporting the ALJ's mental RFC, and they further support the ALJ's conclusion that Dr. Culver's opinion is not supported by the record as a whole. In her brief, Tolbert describes bipolar disorder as one "characterized by cyclical episodes that severely impair her ability to attend work," but she cites no part of the record evidencing that her symptoms restrict her from attending work. Doc. 14 at 11. The record does not indicate that Tolbert required treatment beyond the conservative treatment she was receiving, that she responded erratically to treatment, or that her bipolar disorder caused cyclical episodes affecting her ability to attend work. Merely asserting that bipolar disorder can cause cyclical absences does not establish that they caused cyclical absences for Tolbert. Therefore, to the extent she argues the ALJ did not account for the cyclical absenteeism caused by bipolar disorder, she fails to show the limitation is supported by the record.

Further, the ALJ considered her bipolar disorder and accounted for it in the RFC by limiting her to simple tasks, occasional interaction with supervisors and coworkers, no public interaction, and occasional changes in a routine work setting. Therefore, the "ALJ's decision in the instant case reflects appropriate consideration of [her] bipolar disorder and accounts for her mental limitations in the RFC." *See Marshall v. Kijakazi*, No. 1:20-CV-51-JTA, 2021 WL 4494622, at *6 (M.D. Ala. Sept. 30, 2021) (finding no error in case where ALJ found bipolar disorder to be severe; discussed mental limitations, medical records, and opinion evidence; and assigned an RFC that limited claimant to simple,

routine, repetitive tasks, occasional interaction with the general public and co-workers, and the ability to sustain concentration and attention for two-hour periods) (citing *Nixon v. Kijakazi*, 6:20-cv-957-JRK, 2021 WL 4146295, at * 6 (M.D. Fla. Sept. 13, 2021) (finding no error when ALJ's decision accommodated bipolar disorder by limiting RFC to simple tasks, simple work-related decisions and occasional interaction with the public); *Figueroa v. Comm'r of Soc. Sec.*, No. 6:20-CV-470-DCI, 2021 WL 4148264, at *2 (M.D. Fla. Sept. 13, 2021) (finding ALJ addressed the episodic nature of the claimant's mental health conditions)).

Because the Court's role is to determine whether substantial evidence supports the Commissioner's decision, Tolbert cannot simply identify evidence that supports her position. As noted above, she must show the absence of substantial evidence supporting the ALJ's decision. *Sims*, 706 F. App'x at 604. Here, Dr. Stutts's mental examination and opinion constitute substantial evidence supporting the ALJ's decision, and the Court cannot reweigh the evidence in the record. If substantial evidence supports the ALJ's conclusion, the Court must affirm, even if the evidence preponderates against it. *Winschel*, 631 F.3d at 1178; *Bloodsworth*, 703 F.2d at 1239.

**C.    The ALJ did not err in identifying jobs in the national economy that Tolbert can perform.**

Finally, Plaintiff argues that the ALJ erred when finding that Tolbert could perform the jobs of packing floor worker and hand packer because both jobs have a reasoning development level of two, which require Tolbert to have the ability to understand and

carryout "detailed" instructions.[4] Doc. 14 at 15. She claims the ability to carry out detailed instructions conflicts with the limitation to simple instructions. Doc. 16 at 11–12. As discussed above, in this circuit there is no "apparent conflict between one's limitation to follow simple instructions and positions that require the ability to follow 'detailed but uninvolved' instructions." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1319–20 (11th Cir. 2021). Therefore, this argument fails.

Tolbert additionally argues that it was error to find that she can perform the job of general helper in food preparation, which requires cleaning tanks using steam and water. Tolbert contends she cannot perform a job with steam and water because Dr. Hogan opined that she should avoid all exposure to extreme heat and humidity. Doc. 15 at 16. Again, the RFC is within the province of the ALJ, and an ALJ is not required to include specific limitations from a physician. Here, the ALJ rejected Dr. Hogan's limitation and instead limited Tolbert to occasional exposure to humidity and wetness, extreme cold, and extreme heat. Dr. Whitney's opinion that Tolbert can work with no environmental restrictions constitutes substantial evidence supporting this limitation by the ALJ.

Further, even if Tolbert is unable to work as a general helper, the ALJ identified the other two jobs mentioned above, packing floor worker and hand packer, that Tolbert can perform. Because these jobs are consistent with Tolbert's RFC, any error in the ALJ's conclusion that she can work as a general helper is harmless because there are other jobs she can perform in light of her RFC, age, education, and work experience. *See Valdez v.*

---

[4] Level 2 jobs actually require "detailed *but uninvolved*" instructions. DOT, App. Appendix C - Components of the Definition Trailer, 1991 WL 688702) (emphasis added).

*Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) (finding any error in identifying job with reasoning level of three, when plaintiff's RFC was limited to simple, routine, repetitive work, was harmless because the ALJ identified two other jobs that were consistent with the RFC).

## V.   CONCLUSION

For the reasons set forth above, it is ORDERED as follows:

1.     The Commissioner's decision is AFFIRMED.

2.     A final judgment will be entered separately.

DONE this 29th day of September, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE